UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| HUONGSTEN PRODUCTION IMPORT & EXPORT CO. LTD, ET AL<br><br>   Plaintiffs<br>      v.<br><br>SANCO METALS LLC. ET AL<br><br>   Defendants | Civil No. 10-1610 (SEC) |

**OPINION AND ORDER**

Pending before this Court is Sanco Metal & Recycling Center-Puerto Rico Branch, Sanco Metals LLC ("SANCO"), Helen Lyvuong and Michael Nguyen (collectively "Defendants") motion to dismiss (Docket # 88), and Plaintiffs' opposition thereto (Docket # 95). After reviewing the filings, and the applicable law, Defendants' motion is **DENIED**.

**Factual Brackground**

On July 2, 20101, Huongsen Production Import & Export Company LTD a/k/a Senprodimex Vietnam ("Senprodimex"), Linh Hoang, and Tung Mai (collectively "Plaintiffs")[1] filed suit for breach of contract and damages against Defendants, among others. Docket # 1.

According to the complaint, the relevant facts are as follows. Prior to October 1, 2009, Co-defendant Corporacion LAREB ("LAREB") and the owner of the Lafayette Mill ("Mill"), "Asociación Azucarera Cooperativa Lafayette" ("Asociacion"), were in negotiations to allow LAREB to remove and dispose of all the metal at the Mill. Accordingly, on November 23, 2009, LAREB and Asociacion executed a contract whereupon LAREB would remove all of the steel and scrap metal located at the Mill in a six-month period. Additionally, under this contract, LAREB was obligated to remove the toxic waste, in particular the asbestos that were found within the structures of the Mill. The

---

[1] Senprodimex is a limited liability company organized under the laws of the Socialist Republic of Vietnam, and is represented by Hoang and Mai.

contract stipulated that if LAREB was unable to comply with the time requirements therein set or other conditions expressed in the abovementioned contract, they would be subject to financial penalties.

In the interim, on October 1, 2009, LAREB and SANCO signed their first contract wherein LAREB sold to SANCO all of the scrap metal contained at the Mill as well as conferred upon SANCO the rights to extract the scrap metal from the Mill. This contract also required that SANCO obtain a public liability insurance policy for the work performed, worker's compensation insurance, as well as all the legal permits required by the Commonwealth for the extraction of scrap metal and toxic waste. The parties later cancelled said contract, and on December 15, 2009, LAREB and SANCO signed a second contract which set forth essentially the aforementioned obligations. Under the new contract, however, SANCO also had the obligation to employ "competent" personnel who would efficiently remove both the scrap metal and the toxic waste from the Mill.

While SANCO and LAREB where negotiating the terms of the second contract between them, on November 9, 2009, SANCO resold all the steel and scrap metal at the Mill to Senprodimex.[2] Subsequently, on January 14, 2010, Senprodimex and Puerto Rico Salvage and Demolition Corp. ("PRSD") signed a service agreement, and an amendment to the same, dated January 25, 2010, to remove, process, load and transport all the scrap metal at the Mill on a vessel at a port in Puerto Rico to Vietnam. Under said contract, PRSD agreed to obtain the required permits for the extraction and removal of the metal, as well as ensure the cleaning of the same prior to its transport to Vietnam.

On February 4, 2010, LAREB filed a motion for preliminary and permanent injunction against SANCO and PRSD before the Guayama Superior Court, due to their alleged failure to obtain the required permits and insurance for the removal of the scrap metal. On February 5, 2010, the state court issued a preliminary injunction against SANCO and PRSD, ordering them to cease and desist all demolition, extraction of metals and related work at the Mill. Several hearings were held before the state court regarding therein defendants' compliance with the preliminary injunction.

---

[2] On or about November 4, 2009, LAREB signed an Assignment Letter assigning to SANCO all rights in the Mill.

On July 2, 2010, Plaintiffs filed the present suit against LAREB, SANCO, PRSD and other defendants. On November 16, 2010, SANCO moved for dismissal, arguing that the Colorado River abstention doctrine favors this Court's abstention in the present case. Docket # 88. Plaintiffs timely opposed. Docket # 95.

**Standard of Review**

To survive a Rule 12(b)(6) motion, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[3] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all of their "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe,

---

[3] FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 550 U.S. at 559). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court upheld *Twombly* and clarified that two underlying principles must guide this Court's assessment of the adequacy of the plaintiffs' pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

Therefore, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citing Twombly, 550 U.S. at 555). That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

The Court "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F. 3d 301, 305-06 (1st Cir. 2008).

**Applicable Law and Analysis**

In their motion to dismiss, SANCO contends that the Colorado River doctrine favors abstention in the present case. In support thereof, they argue that the instant suit involves a *res* located in Arroyo, Puerto Rico; the Guayama case was filed prior to this case and is at an advanced stage; dismissal would avoid piecemeal litigation; Plaintiffs' complaint is based on Puerto Rico law; the state court will adequately protect the rights of all parties involved; and Plaintiffs filed this suit as a result of the preliminary injunction issued in state court which ordered PRSD to cease all work at the Mill. SANCO further moves for dismissal of the claims against Lyvuong and Nguyen in their personal capacity insofar as SANCO is a limited liability company and most of the contracts in dispute were signed by Jorge Adorno, SANCO's representative.

In opposition, Plaintiffs aver that the exceptional circumstances that support the application of the Colorado River abstention doctrine are not met in this case. Specifically, they note that the complaint in this case is for damages and not about possession of a *res*; the federal court is more convenient for most of the parties in the case; all of the parties in the state case are defendants in this case, eliminating the risk of piecemeal litigation; Plaintiffs are not parties in the state case; there are no novel, unusual of difficult questions of state law that merit abstention; and the federal court will properly safeguard the rights of all parties. Moreover, Plaintiffs argue that as alleged in the complaint, Nguyen and Lyvuong's actions contributed to the damages sought in the present case, thus dismissal of the claims against them is unwarranted.

*Colorado River abstention doctrine*

In <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976), the United States Supreme Court established a narrow basis for district courts to stay or dismiss federal lawsuits in deference to parallel state proceedings. <u>Dibbs v. Gonsalves</u>, 921 F. Supp. 44, 53 (D.P.R. 1996). Therein, the Court held that in "exceptional circumstances," a federal court could decline jurisdiction based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." <u>Colorado River</u>, 424 U.S. at 817. It further enumerated four factors to determine whether "exceptional circumstances" exist that warrant abstention: (1) whether

either court has assumed jurisdiction over some *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. Colorado River, 424 U.S. at 818; see also Dibbs, 921 F. Supp. at 53. Subsequently, the Court suggested two other factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 26 (1983); see also Dibbs, 921 F. Supp. at 53. Some courts, including this Circuit, have also considered the vexatious or reactive nature of the federal lawsuit as well as the principles underlying removal jurisdiction. Moses H. Cone, 460 U.S. at 17 n.20; see United States v. Fairway Capital Corp., 483 F.3d 34, 40 (1st Cir. 2007); Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 915 F.2d 7, 12 (1st Cir. 1990); Fuller Co. v. Ramon I Gil, Inc., 782 F.2d 306, 308-310 (1st Cir. 1986); Valle-Arce v. P.R. Ports Auth., 585 F. Supp. 2d 246, 251 (D.P.R. 2008); Dibbs, 921 F. Supp. at 53.

Notwithstanding, courts should stay or dismiss cases under this doctrine with great caution. Dibbs, 921 F. Supp. at 53. Thus "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." Valle-Arce, 585 F. Supp. 2d 251 (citing Colorado River, 424 U.S. at 813). As a matter of fact, "[o]f all the abstention doctrines, it is to be approached with the most caution, with '[o]nly the clearest of justifications' warranting dismissal." Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 (1st Cir. 2010) (citing Colorado River, 424 U.S. at 819). On this point, the Supreme Court noted "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them,"and warned that "only the clearest of justifications will warrant dismissal." Dibbs, 921 F. Supp. at 53 (citing Colorado River, 424 U.S. at 817 & 819). Therefore, courts may weigh any single factor differently, depending on the case, and no factor is determinative or exhaustive. Id. (citing Colorado River, 424 U.S. at 818-819); see also Valle-Arce, 585 F. Supp. 2d 251. It must be a "carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Dibbs, 921 F. Supp. at 53 (citing Colorado River, 424 U.S. at 818-819); see also Jimenez, 597 F.3d at 28. Additionally, although the district court has the discretion to dismiss or stay proceedings when there is parallel litigation pending in another forum, Valle-Arce, 585 F.

Supp. 2d at 250, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone, 460 U.S. at 16. As a result, "the cases that satisfy this test are few and far between." Jimenez, 597 F.3d at 28.

The First Circuit has held that the Colorado River abstention doctrine applies if a two-part test is satisfied. Valle-Arce, 585 F. Supp. 2d at 250 (citing H&R Block Tax Services, Inc. v. Rivera Alicea, 570 F.Supp.2d 255, 266 (D.P.R. 2008) (citations omitted). The court must first determine whether the actions in the state and federal forums are parallel, that is, "if they involve the same parties and substantially identical claims, raising nearly identical allegations and issues." Id. (citations omitted). Second, the court must consider and balance a number of factors to determine whether the case falls under the "exceptional circumstances" set forth in *Colorado River* as to justify abstention. Id. at 250-51. Therefore, "the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." Jimenez, 597 F.3d at 27.

Upon reviewing the record, we quickly note that the Colorado River abstention doctrine is inapposite in this case. Specifically, the state and federal cases do not involve the same parties insofar as Plaintiffs are not parties to the state court case. As a matter of fact, the only parties to the state case are SANCO, LAREB and PRSD. That is, all other defendants are also absent from said proceedings. Similarly, the state and federal cases raise differing claims; the federal case is for damages and breach of contract whereas the state court case is a request for preliminary injunction. Accordingly, these factors alone militate against abstention in this case.

Even more, an analysis of the factors set forth in the "exceptional circumstances test" also disfavor abstention, since the object of the present suit is not a property located in Puerto Rico;[4] the federal and Puerto Rico forums are equally convenient; this forum is well equipped to protect the parties' interests; there is nothing vexatious or contrived about Plaintiffs' federal lawsuit; there are no novel or difficult questions of state law involved; and removal

---

[4] The object of this suit is the metal located at the Mill.

jurisdiction is irrelevant here. See Jimenez, 597 F.3d at 28. Moreover, despite the fact that the preliminary injunction was requested prior to the filing of this case, there is no risk of piecemeal litigation because the state and federal cases involve different issues of law and not all parties are present in the state court case. Even more, since the state court case was filed only five months prior to the federal suit, and only involves SANCO, LAREB and PRSD, we cannot conclude that the state proceedings are so advanced as to merit abstention. As a matter of fact, the parties in this case have invested substantial time, money and resources to litigate the federal case, dispositive motions have been filed and a hearing was held before the court.

Based on the foregoing, this Court finds that abstention under the Colorado River doctrine is unwarranted. As such, SANCO's request for dismissal on this front is **DENIED**.

*Claims against Nguyen and Lyvuong*

This district has noted that "[u]nder Puerto Rico law, directors, officers, or shareholders of a corporation are not subject to personal liability for actions of the corporation merely because of their corporate title or ownership role." Stockdale v. Doral Fin. Corp., No. 08-2120, slip op. at 47-48 (D.P.R. Sept. 17, 2009) (citing DACO v. Alturas de Florida Dev. Corp., 132 D.P.R. 905, 1993 Juris P.R. 33 (1993), P.R.-Eng. 840, 226). An officer of a corporation, however, "is liable for torts in which he personally participated, whether or not he was acting within the scope of his authority." Id. (citing Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 907 (1st Cir. 1980). In order for individual liability to attach, the moving party must "show direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiff's injury." Id.

Considering that we are at the motion to dismiss stage, the facts alleged in the complaint regarding Nguyen and Lyvuong's personal involvement and alleged tortious conduct set forth a plausible entitlement to relief for damages. As such, dismissal of the claims against them is also unwarranted at this time.

**Conclusion**

Based on the foregoing, SANCO's motion to dismiss is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of April, 2011.

*s/Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge