**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

HUONGSTEN PRODUCTION IMPORT
& EXPORT CO. LTD, ET AL

   Plaintiffs

          v.

SANCO METALS LLC., ET AL

   Defendants

**Civil No. 10-1610 (SEC)**

**OPINION AND ORDER**

Before the Court are plaintiffs Huongsen Production Import & Export Company LTD a/k/a Senprodimex Vietnam, Linh Hoang, and Tung Mai's (collectively "Plaintiffs") Motion to Dismiss (Docket # 39);[1] Corporación LAREB and Héctor Ayala's (collectively "LAREB") opposition thereto (Docket # 56);[2] and Plaintiffs' reply (Docket # 91). After reviewing the filings and the applicable law, Plaintiffs' motion is **GRANTED IN PART AND DENIED IN PART**.

**Factual and procedural Background**

This diversity case dates back to July 2, 2010, when Plaintiffs filed suit for breach of contract and damages against LAREB, among others, in connection with a contract for the extraction of scrap and steel metal from the Lafayette Mill in Arroyo (the "Mill"). Docket # 1. On August 18, 2010, LAREB filed its answer and a counterclaim against Plaintiffs, alleging that Plaintiffs (1) tortiously interfered with an agreement between LAREB and Sanco Metals LLC

---

[1] Senprodimex is a limited liability company organized under the laws of the Socialist Republic of Vietnam, and is represented by Hoang and Mai.

[2] Hector Ayala, LAREB's president, is being sued in his personal capacity. For simplicity's sake, however, the Court will refer to Ayala and LAREB indistinctively.

**CIVIL NO. 10-1610 (SEC)**                                                                                           **Page 2**

and Sanco Metal & Recycling Center- Puerto Rico Branch (collectively "SANCO"); (2) negligently hired Puerto Rico Salvage & Demolition Inc. and Zen America Capital Corporation (collectively the "Independent Contractors") to remove the steel and scrap metal from the Mill; and (3) failed to adequately supervise the Independent Contractors. LAREB's allegations are predicated on Article 1802 and 1803, Puerto Rico's tort statutes.[3]

On October 1, 2009, LAREB and SANCO signed their first contract whereby LAREB sold to SANCO all of the scrap metal contained at the Mill, and conferred upon SANCO the rights to extract it from the Mill.[4] This contract required SANCO to obtain a public liability insurance policy for the work performed, workers' compensation insurance, as well as all of the legal permits required by the Commonwealth for the extraction of scrap metal and toxic waste.[5]

Subsequently, on December 15, 2009, LAREB and SANCO signed a second contract that stipulated essentially the same aforementioned obligations. Under the new contract, however, SANCO was also obligated to employ "competent" personnel who would efficiently remove both the scrap metal and the toxic waste from the Mill. As part of the contract's negotiations,

---

[3] Ruling upon motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will relate the facts as alleged in the counterclaim. See SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc).

[4] The Court is aware that LAREB has impugned the authenticity of this contract.

[5] It was not until November 23, 2009, that LAREB and "Asociación Azucarera Cooperativa Lafayette" ("Asociación"), the Mill's owner, executed a contract whereby LAREB acquired all metal, steel and scrap metal at the Mill and its boundaries. As part of its contractual obligations LAREB had to remove said materials from the Mill within a six-month period. Additionally, LAREB was obligated to remove the toxic waste, including any asbestos, found within the structures of the Mill. The contract stipulated that if LAREB was unable to comply with the time requirements or conditions therein expressed, it would be subject to financial penalties.

**CIVIL NO. 10-1610 (SEC)** Page 3

LAREB informed SANCO of the agreement between LAREB and Asociación, particularly regarding the time restrictions for removing all steel and scrap metal without penalties, and the responsibility of removing all asbestos from the site. During these negotiations, SANCO never informed LAREB that it intended to resell the steel and scrap metal from the Mill; this led LAREB to believe that SANCO would directly perform and engage in all required work.

On November 9, 2009, while SANCO and LAREB negotiated the terms of their second contract, SANCO turned around and sold all the steel and scrap metal to Plaintiffs.[6] LAREB alleges that Plaintiffs knew about the contractual agreements between LAREB and SANCO, and that it was unaware that SANCO had contracted with Plaintiffs. On January 14, 2010, Plaintiffs signed a service agreement with the Independent Contractors to remove all steel and scrap metal from the Mill and transport the same to Plaintiffs.

According to the counterclaim, notwithstanding their knowledge, Plaintiffs' agreements with the Independent Contractors tortiously interfered with the terms and conditions of the LAREB-SANCO agreement. By virtue of Plaintiffs' agreements with the Independent Contractors, the latter had to obtain all required permits to remove the steel and scrap metal from the Mill; they also had the duty to obtain workers' compensation insurance for all employees who would remove the scrap metal from the Mill. According to LAREB, the Independent Contractors were unqualified to perform the removal of the steel and scrap metal from the Mill. They failed to (1) obtain the demolition permits necessary for the extraction of metal; (2) secure the permits for the removal of asbestos from the metal in the Mill; (3) acquire a workers' compensation insurance policy or public liability insurance; and (4) secure the Mill's

---

[6] On or about November 4, 2009, LAREB signed an Assignment Letter assigning to SANCO all rights in the Mill.

premises. This last omission resulted in the loss through theft of substantial amounts of steel and scrap metal.

As a result of these omissions, LAREB faced proceedings before local government agencies as well as workers' compensations claims from employees injured at the Mill. LAREB was also forced to seek injunctive relief before the state courts to enjoin Puerto Rico Salvage & Demolition Inc., and SANCO from removing metal from the Mill without the appropriate permits. Additionally, LAREB failed to remove the metal from the Mill within six months, as agreed with Asociación, and consequently, had to pay fines because of said breach of contract.

In its counterclaim, LAREB advances two claims.  First, that under Articles 1802 and 1803 of the Puerto Rico Civil Code, Plaintiffs were negligent or at fault in selecting the Independent Contractors to remove the steel and scrap metal from the Mill, and that Plaintiffs failed to properly supervise the work performed by them. Second, that Plaintiffs tortiously interfered with the agreement between LAREB and SANCO, by executing agreements with the Independent Contractors that contained terms and conditions contrary to those of the LAREB-SANCO agreement.

On September 8, 2010, Plaintiffs moved to dismiss the counterclaim, arguing that LAREB lacks standing to claim (1) damages to the Mill property; (2) damages as a result of claims for injured workers; and (3) damages for loss of steel and scrap metal. They also contend that LAREB's tortious interference claim fails because Plaintiffs' intent to interfere, a required element, cannot be inferred from their actions. Alternatively, they argue that LAREB is estopped from enforcing the LAREB-SANCO Contract II.

**CIVIL NO. 10-1610 (SEC)**  Page 5

Regarding LAREB's Article 1803 claims, Plaintiffs contend that the Independent Contractors were experienced in their line of business. Furthermore, Plaintiffs aver that they were not required to supervise them. Finally, they allege that LAREB suffered no damages because they were paid for all rights to the metal at the Mill.[7] LAREB timely opposed. Docket # 56.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[8] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution,

---

[7] Whether or not LAREB was paid for all rights to the metal at the Mill is irrelevant insofar as many of the counterclaim's claims are extraneous to the rights in question; that is, the damages allegedly suffered by LAREB because of the Independent Contractors' mishaps. This argument is thus unavailing and will not be considered further.

[8] Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant *fair notice* of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (emphasis added).

**CIVIL NO. 10-1610 (SEC)**  Page 6

and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559. Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Id. Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the

**CIVIL NO. 10-1610 (SEC)**  Page 7

factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

**Applicable Law and Analysis**

In diversity cases, such as this one, state law governs the substantive outcome. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, 58 (1938); Univ. Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 19 n. 1 (1st Cir.1999). When interpreting state law, federal courts employ the method and approach promulgated by the state's highest court. See Nat'l Pharmacies, Inc. v. Feliciano-de-Melecio, 221 F.3d 235, 241-42 (1st Cir. 2000). It is Puerto Rican hornbook law that "[f]ield of damages is governed-both in form and in content-by the civil law system." Valle v. American International Insurance Co., 108 D.P.R. 692, 8 P.R. Offic. Trans. 735, 736 (1979).

**I.    Standing**

As a preliminary matter, the Court will address Plaintiffs' contention regarding LAREB's lack of standing to claim (1) damages to the Mill property; (2) damages as a result of claims for

injured workers; and (3) damages for loss of steel and scrap metal. The Court will address these arguments seriatim.

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" <u>Valley Forge Christian Col. v. Ams. United for Separation of Church & State</u>, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." <u>Raines v. Byrd</u>, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). A vital part of case and controversy limitation on the power of federal courts is the requirement that a plaintiff must have standing to invoke federal court jurisdiction. See <u>Valley Forge</u>, 454 U.S. at 471-73, 102 S.Ct. 752; <u>Am. Postal Workers Union v. Frank</u>, 968 F.2d 1373, 1374 (1st Cir.1992). "[S]tanding is a threshold issue, determining whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case." <u>Libertad v. Welch</u>, 53 F.3d 428, 436(1st Cir.1995) (citing <u>United States v. AVX Corp.</u>, 962 F.2d 108, 113 (1st Cir.1992)). Therefore, if a plaintiff lacks standing to bring a matter before a court, the court lacks jurisdiction to decide the merits of the underlying case, and must dismiss the complaint. <u>AVX Corp.</u>, 962 F.2d at 113.

Based on the foregoing principles, to acquire Article III standing to act as independent litigants, a Plaintiff "[m]ust have suffered an 'injury in fact' that is causally connected to the complained-of conduct and that will likely be redressed by a favorable federal court decision." <u>Indus. Commc'ns & Elecs., Inc. v. Town of Alton</u>, ––– F.3d –––, No. 10–1738, 2011 WL 1887334, at *3 (1st Cir. May 19, 2011) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

*Damages to the Mill property*

In their motion to dismiss, Plaintiffs proclaim that LAREB lacks standing to claim damages to the Mill property because LAREB is not its owner. But LAREB does not allege damages to the Mill property anywhere in the counterclaim. The Plaintiffs thus misstate the counterclaim's allegations; in consequence, the Court need not address this matter further.

*Damages as a result of claims for injured workers*

According to the counterclaim, "[d]ue to the failure to obtain . . . workmen's [sic] compensation and liability insurance, LAREB had to endure hearings and proceedings before local government agencies, as well as *face workmen's compensation claims from employees injured at the project site.*" Docket # 29 at 33 ¶ 18 (emphasis added). Plaintiffs contend, however, that LAREB has no standing to claim damages for the Independent Contractors' failure to obtain the State Insurance Fund Policy because "[n]either LAREB nor Ayala is the employer o[f] any of the employees that allegedly were injured at the project site." Docket # 39 at 10. And because it is the employer's responsibility to compensate employees, Plaintiffs argue that "[L]AREB's exposure to these worker's claims is the same regardless of whether an insurance policy existed." Id.

Here, LAREB alleges economic interests impaired by the Independent Contractors' failure to obtain workers' compensation. Had the Independent Contractors obtained the State Insurance Fund policy, LAREB argues, these claims would not have been directed at LAREB. Pursuant to the Workers' Compensation Act, P.R. Laws Ann. tit. 11, § 1 et seq, Plaintiffs have the better argument as LAREB is neither the worker's employer nor a statutory employer; the immunity only extends to an employer or a statutory employer. See e.g., Torres Solis v. A.E.E., 136 D.P.R. 302, 310 (1994); Feliciano Rolon v. Ortho Biologics LLC, 404 F.Supp.2d 409, 415-

**CIVIL NO. 10-1610 (SEC)**                                                                                                           Page 10

5 (D.P.R. 2005). Indeed, because LAREB did not subcontract the services of the Independent Contractors, its liability as a third party is the same regardless of the existence of an insurance policy. Cf. Torres Solis, 136 D.P.R. at 310. It follows that LAREB's alleged damages cannot be redressed by a favorable federal court decision. Accordingly, LAREB has no standing to claim damages for the Independent Contractors' failure to obtain such a policy.

*Damages for loss of steel and scrap metal*

According to the counterclaim, LAREB also claims damages "[f]or lost steel and scrap metal at the Mill." Docket # 29 at 35 ¶30. In opposition, Plaintiffs aver that LAREB relinquished its rights and obligations to SANCO on November 4, 2009, by means of an assignment letter. Furthermore, per the December 15, 2009 contract, LAREB purportedly transferred to SANCO all the metal acquired from Asociación. Given these circumstances– LAREB's abrogation of its rights over the steel and scrap metal– Plaintiffs reason that LAREB could suffer no injury in connection with the lost steel and scrap metal at the Mill as a consequence of Plaintiffs' actions. Plaintiffs conclude that LAREB no longer has a legal interest in the steel and scrap metal, and thus lacks standing to claim damages for it.

Plaintiffs' argument is sound. Taking into account, however, the possibility that SANCO never acquired these rights from LAREB, or that LAREB somehow reacquired these rights, see e.g., Docket # 1 ¶¶ 48-49; Docket # 39 at 8, the Court will defer this determination for a later stage of the proceedings. See Ocasio-Hernandez, F.3d at 12-13 ("[A] court [may not] attempt to forecast a plaintiffs' likelihood of success on the merits; a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely") (internal quotation marks omitted).

**CIVIL NO. 10-1610 (SEC)**                                                                                                      Page 11

Having disposed of this preliminary matter, the Court turns to the substantive merits of Plaintiffs' 12(b)(6) motion. [9]

**II. Article 1802 claims**

Article 1802 establishes that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A claimant seeking relief under this article must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Soc. Gananciales v. Padin Co., Inc., 17 P.R. Offic. Trans. 111, 117 P.R. Dec. 94 (1986). The scope of negligence under Article 1802 is broad—"as broad as the behavior of human beings... includ[ing] any fault that causes harm or injury." Bonilla v. Chardon, 18 P.R.Offic. Trans. 696, 709, 118 P.R.Dec. 599 (1987) (quoting Colon v. Romero-Barcelo, 112 P.R.Dec. 573, 579 (1982)); see also Vernet v. Serrano Torres, 566 F.3d 254, 259 (1st Cir. 2009)(noting that the provisions of Article 1802 must be interpreted expansively). Nevertheless, the existence of an injury or damages alone is not grounds for liability under Article 1802. A defendant will be liable only for those reasonably foreseeable consequences associated with his acts or omissions. Wojciechowicz v. United States, 576 F. Supp. 2d 241, 270-72 (D.P.R. 2008) (citing De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998)).

---

[9] Plaintiffs also argue that LAREB is estopped from enforcing the LAREB-SANCO "Contract II," see Docket #39 at 8. But at this stage of the proceedings, the Court is unable to ascertain, nor the Plaintiffs can show, whether LAREB intentionally induced Plaintiffs' reliance on the Assignment Letter, among other requirements. See Vistamar, Inc. v. Fagundo-Fagundo, 430 F.3d 66, 73 (1st Cir. 2005); Clauson v. Smith, 823 F.2d 660, 661 (1st Cir. 1987). Either way, this argument misses the mark for LAREB's counterclaim does not necessarily seek to enforce Contract II. In fact, most of LAREB's grievances pertain to incidents related to the performance of the agreements between Plaintiffs and the Independent Contractors. See Docket # 56 at 6.

**CIVIL NO. 10-1610 (SEC)**                                                                                      Page 12

Regarding a defendant's omissions, those "that generate[] liability under Article 1802 happen[] when 'the law imposes a duty of care requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk.'" Zabala-Calderon v. U.S., 616 F. Supp. 2d 195, 199 (D.P.R. 2008). The duty of care may arise in one of three ways: "(1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." De Jesus, 160 F.3d 842. Moreover, "the duty is defined by the general rule that one must act as would a prudent and reasonable person under similar circumstances." Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir, 2007) (citing Ortiz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic Trans. 407, 101 P.R.Dec. 290 (1973). Although the duty of care calls for the anticipation of reasonably probable injuries to probable victims, Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987), "the foreseeability required under [Article] 1802 does not extend to all imaginable effects resulting from defendant's conduct. This would be tantamount to turning the defendant into an absolute insurer of its acts and omissions." Wojciechowicz, 576 F. Supp. 2d at 272. Therefore, a person breaches the duty of reasonable care only when his actions create reasonably foreseeable risks. Vazquez-Filippetti, 504 F.3d 43, 49.

In Gen. Office Prods. v. A. M. Capen's Sons, 115 P.R. Dec. 553 (1984), the Puerto Rico Supreme Court recognized a cause of action for third parties' tortious interference with contractual obligations, as a subset of claims under Article 1802. To establish such a claim, the moving party must show (1) the existence of a contract with which a third party interferes (2) fault must be present as the third party must act tortiously with knowledge of the contract's existence; (3) there must be a damage; and 4) the damages must be a consequence of the tortious acts of the third party. Gen. Office Prods. Corp. v. A. M. Capen's Sons, Inc., 115 P.R. Dec. 553,

**CIVIL NO. 10-1610 (SEC)** Page 13

559 (1984); Dolphin Int'l of P.R. v. Ryder Truck Lines, 127 P.R. Dec. 869 (1991); Jusino v. Walgreens, 155 P.R. Dec. 560 (2001). Regarding the second prong, knowledge, without more, is not akin to fault. Cf. New Comm Wireless Servs. v. SprintCom, Inc., 287 F.3d 1, 10 (1st Cir. 2002) ("[T]he fault element of tortious interference requires a stronger showing") (internal quotation marks omitted). In Jusino, the Puerto Rico Supreme Court affirmed that, regarding this element, the defendant has to intentionally interfere, knowing that such interference will injure the plaintiff. See Jusino, 155 P.R. Dec. at 575-6 (2001). The aggrieved party need only show or present evidence from which it could be inferred that the third person acted in a willful manner and with knowledge of the existence of the contract. General Office Prods., 115 P.R. Dec. at 557.

At the outset, the Court notes the counterclaim's failure to satisfy the second element of a tortious interference claim: the existence of fault. Here, LAREB alleges that Plaintiffs knew "[o]f the existence of a contractual relationship between LAREB and SANCO, yet the [Independent Contractors] agreements tortiously interfered with the terms and conditions of the [a]greement executed by and between LAREB and SANCO." Docket # 29 at 34 ¶ 29. Conceding, Plaintiffs argue that "[they] were aware only of a contract executed by and between LAREB and SANCO on or about October 1, 2009 (the "LAREB-SANCO Contract I"), which significantly differed from the LAREB-SANCO Contract II." Docket # 39 at 6 n. 1 (citing Verified Complaint ¶ 43-45). Because Plaintiffs' contracts with [the Independent Contractors] antedated the LAREB-SANCO "Contract II," Plaintiffs argue, LAREB's allegations that Plaintiffs interfered with the LAREB-SANCO Contract II [are] "not merely implausible, but absurd." Id. at 6.

**CIVIL NO. 10-1610 (SEC)**                                                                                      Page 14

Responding to these charges, LAREB contends that Plaintiffs' admitted knowledge of the assignment letter is sufficient to infer their knowledge. See Docket # 56 at 6. "[P]recise knowledge of the chain of events leading to the . . . violation may often be unavailable to . . . at this early stage of the litigation. . . ." Ocasio-Hernandez, F.3d at 16. Although this is a close case,"[o]n a motion to dismiss, [courts] are obligated to view the facts of the complaint in the light most favorable to the [counterclaimants], and to resolve any ambiguities in their favor." Id. at 17. Accordingly, Plaintiffs' knowledge of the LAREB-SANCO agreements is plausible.

Mere knowledge, however, does not equate to fault. Cf. New Comm Wireless Servs, 287 F.3d at 10. Accordingly, the counterclaim also needs to show that Plaintiffs acted in a willful manner. See General Office Prods., 115 P.R. Dec. at 557. Here, LAREB concludes, with no supporting facts, that Plaintiffs' contracts with the Independent Contractors tortiously interfered with the LAREB-SANCO agreements. But these allegations are merely conclusions and recitations of the legal elements of the cause of action, and as such, ought to be disregarded. See Iqbal, 129 S.Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). LAREB offers no facts to provide heft to their otherwise bare and insufficient allegations.

Common sense, moreover, dictates the implausibility of LAREB's claims on this end: Plaintiffs relied on the Assignment Letter wherein LAREB transferred to SANCO all of its rights and responsibilities in the Mill for they presumably thought it was a valid and enforceable instrument. After all, "[t]here is a presumption that every contract has a consideration and that it is licit unless said presumption is overcome by evidence to the contrary." Docket # 58 at 2 (citing Ledesma Marrero v. Ledesma Marrero, 84 P.R. Dec. 167 (1961)). After disbursing large

**CIVIL NO. 10-1610 (SEC)**                                                                                          Page 15

quantities of money, Plaintiffs engaged the Independent Contractors to complete their investment. The Court concurs with Plaintiffs that their reliance "[o]n the Assignment Letter and the LAREB-SANCO Contract I cannot be construed, even with the most extensive contortions, as . . . [intentionally interfering] with the LAREB-SANCO Contract II." Docket # 58 at 5.  Although Plaintiffs had knowledge of the agreements between LAREB and SANCO, LAREB offers no facts to infer that Plaintiffs interfered in a willful manner. And no reasons can be drawn to support such an inference. The counterclaim thus fails to comply with the second element of a tortious interference claim.

With LAREB having failed to meet this prong, the Court need not go further. LAREB's lack of factual allegations fail to nudge their claims of tortious interference "across the line from conceivable to plausible." Iqbal, 129 S.Ct at 1951. Accordingly, LAREB's tortious interference claims are hereby **DISMISSED**.

Although the counterclaim fails to properly plead all requirements for a tortious interference claim, it nevertheless stands as a general tort claim. According to the counterclaim, "[Plaintiffs] are . . . liable for the negligent or at fault acts and omissions of [their independent contractors] at the [Mill], while acting as *contractors* or agents for Plaintiffs. Docket # 29 at at 33 ¶ 24 (emphasis added). Similarly, the counterclaim states that Plaintiffs selected the Independent Contractors to perform the removal of steel and scrap material from the Mill (despite their lacking the necessary skill, permits, and knowledge to perform such work), and failed to supervise their work at the Mill.

In Pons Anca v. Engenbretson, 160 P.R. Dec. 347 (2003), the Supreme Court of Puerto Rico reiterated that an independent contractor's principal "[m]ay be liable for the negligent acts of an independent contractor when the work for which the contractor has been hired, by its

**CIVIL NO. 10-1610 (SEC)**                                                                 Page 16

nature, entails particular risks or hazards and the principal neither requires the contractor to take special safety measures nor takes these measures himself." Ocasio v. Hogar Geobel Inc., 693 F.Supp.2d 167, 180 (D.P.R. 2008) (quoting Pons Anca, 160 P.R. Dec. at 358; Martinez v. Chase Manhattan Bank, 8 P.R. Offic. Trans. 542 (1979). Contrary to LAREB's assertions, see Docket 56 at 9, however, the principal is *not* vicariously liable for the negligent act of its independent contractor; rather, the principal's source of liability stems from Article 1802, i.e., direct liability. See Lopez v. Cruz Ruiz, 131 P.R. Dec. 694, 706 (1992) ("This test does not hold the employer vicariously liable for injuries caused by an independent contractor or his employee.").[10]

According to the counterclaim, the Independent Contractors failed to obtain the demolition permits necessary for the extraction of metal; secure the permits for the removal of asbestos from the metal in the Mill; obtain a workers' compensation insurance policy or public liability insurance; and secure the Mill's premises which resulted in the loss through theft of substantial amounts of steel and scrap metal. LAREB alleges that, as a result of these omissions, it faced proceedings before local government agencies, and was also forced to seek injunctive relief before state courts to enjoin Plaintiffs' independent contractors from removing metal from the Mill without the appropriate permits.

Furthermore, the work performed by the Independent Contractors–namely the demolition of structures and the removal of steel and scrap material– poses inherent risks. Cf. Pacheco v. A.F.F., 112 P.R. Dec. 296 (1982) (electricity-related labors are inherently dangerous); Vda. de

---

[10] The Court further stated: "[i]t only imposes liability when through said contractor's own fault or negligence, and lack of foreseeability with regard to the need to take special precautions, injuries are caused to third persons. The fault or negligence that gives rise to the employer's liability is the result of the failure to take the necessary precautions, given the particular risks of a project. Id. (footnote omitted).

**CIVIL NO. 10-1610 (SEC)**                                                                                                   Page 17

Delgado v. Boston Ins. Co., 99 P.R. Dec. 714 (1971) (flammable substances are inherently dangerous); see also Wagner v. Continental Cas. Co., a Div. of CNA Ins. Companies, 143 Wis. 2d 379, 421 N.W.2d 835 (1988) (demolition work on building is "inherently dangerous"). Taking this into account, and after affording LAREB's allegations the presumption of truth to which they are entitled, the counterclaim plainly shows the plausibility of Plaintiffs' liability for the omissions of the Independent Contractors.

In their motion to dismiss, Plaintiffs allege that the Independent Contractors "[are] experienced in the pertinent lines of business." Docket # 39 at 11 (footnote omitted). But at this juncture, this fact-based allegation is not ripe for determination. Indeed, in resolving a motion to dismiss, the Court evaluates "[t]he plausibility of a legal claim . . . ." Ocasio-Hernandez, F.3d at 12, not the merits of Plaintiffs' factual defenses. "Although discovery may reveal facts that belie the plaintiffs' claim, that possibility does not negate its plausibility." Id. at 19. Lacking any legal support, Plaintiffs also aver that they were not required to supervise the Independent Contractors. This *ipse dixit* is unavailing because, given the particular risks involved in this case, Plaintiffs' liability stems from their duty to ensure that the Independent Contractors took special safety measures to avoid the foreseeable risks inherent to the demolition of structures and the removal of steel and scrap material. See Pons Anca, 160 P.R. Dec. at 358.

Taking all these well-pleaded factual allegations as true, LAREB has pleaded adequate factual material to support a reasonable inference; that Plaintiffs, as principals, could be liable for LAREB's damages stemming from Plaintiffs' negligent selection and/or lack of supervision of the Independent Contractors. In light of the foregoing, the collective weight of LAREB's factual allegations, nudge their general tort claims "across the line from conceivable to plausible." Iqbal, 129 S.Ct at 1951.

**CIVIL NO. 10-1610 (SEC)**                                                                                      Page 18

### III. Cause of action under Article 1803

LAREB also seeks redress under Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5142 , which provides a list of situations wherein a party can be found liable for the tortious acts of another. The Supreme Court of Puerto Rico has said that this list "is limitative and is not a mere collection of examples." Torres v. Pérez v. López, 113 P.R. Dec. 72, 76 (1982). These exceptions are as follows: the liability (1) of the father or mother for the damage caused by minor children; (2) of guardians for the damage caused by the persons under their authority who reside with them; (3) *of employers for the damage caused by an employee acting in the course of his employment*; (4) of masters or directors of arts and trades for the damage caused by their pupils or apprentices, and (5) of the government of the Commonwealth of Puerto Rico under certain pre-established circumstances. § 5142

Pursuant to the foregoing, the only plausible scenario where Plaintiffs may be vicariously liable is if LAREB alleges enough facts to infer that an employer-employee relationship existed between Plaintiffs and the Independent Contractors. The counterclaim, however, even viewed in the light most favorable to LAREB, is devoid of any allegations concerning an employer-employee relationship. The allegation that "[Plaintiffs] are also jointly liable for acts or omissions, of [the Independent Contractors], constituting fault or negligence under [Article 1803], which have caused damages to LAREB and Mr. Ayala Vega" (Docket # 29 at  at 34 ¶ 28) are "[t]hreadbare recitals of the elements of a cause of action." Twombly, 550 U.S. at 555. Indeed, because it is plausible that Plaintiffs are liable for the acts of the Independent Contractor, it is inconceivable, and thus implausible that the Independent Contractors are also Plaintiffs' employees. See supra n. 10 and accompanying text. Viewed in the light most favorable to LAREB, and "draw[ing] on our 'judicial experience and common sense' as we make a contextual judgment about the sufficiency of the pleadings," Rodriguez-Garcia v.

Miranda-Marin, 610 F.3d 756, 768 (1st Cir. 2010) (quoting Iqbal, 129 S.Ct. At 1950), LAREB's Article 1803 claims are implausible.

LAREB thus has failed to plead sufficient facts to state a claim under Article 1803 to hold Plaintiffs' vicariously liable for the damages caused by the Independent Contractors as LAREB has failed to establish an employer-employee relationship between Plaintiffs and the Independent Contractors. Accordingly, LAREB's Article 1803 claims are hereby **DISMISSED**.

**Conclusion**

In light of the foregoing, LAREB's Article 1803 and tortious interference claims are hereby **DISMISSED**. But LAREB's general tort claims survive. Accordingly, Plaintiffs' motion to dismiss LAREB's counterclaim is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 16th day of August, 2011.

*s/Salvador E. Casellas*
Salvador E. Casellas
U.S. Senior District Judge