IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HUONGSTEN PRODUCTION IMPORT
& EXPORT CO. LTD, ET AL.

    Plaintiffs,

              v.

SANCO METALS LLC., ET AL.

    Defendants.

Civil No. 10-1610 (SEC)

**OPINION AND ORDER**

Before the Court are plaintiffs' motion for summary judgment (Docket # 277), counterclaimant's opposition thereto (Dockets # 287), and the parties' respective replies (Docket # 293 & 302). After reviewing the filings and the applicable law, plaintiffs' motion is **GRANTED**.

**Factual and procedural Background**

This diversity action originated on July 2, 2010, when plaintiffs Huongsen Production Import & Export Company LTD a/k/a Senprodimex Vietnam, Linh Hoang, and Tung Mai's (collectively, "Plaintiffs") filed suit for breach of contract and damages against counterclaimant Michael Nguyen, among others. Docket # 1.[1] The underlying suit centered around allegations that Nguyen, along with several co-defendants, deceived Plaintiffs into disbursing almost three million dollars by issuing bogus documents for the extraction of steel and scrap metal from the Lafayette Mill (the "Mill") in Arroyo, Puerto Rico.

---

[1] As relevant here, the other co-defendants are Sanco Metals LLC, Sanco Metal & Recycling Center-Puerto Rico Branch, and Helen Lyvuong (collectively, "SANCO"), Zen America Capital Corporation ("Zen America"), and Puerto Rico Salvage & Demolition Corp ("PRSD"). On March 14, 2011, this court entered a Nunc Pro Tunc Amended Default Partial Judgment against Zen America and PRSD, among others. Docket # 165.

**CIVIL NO. 10-1610 (SEC)**                                                                 Page 2

A comprehensive recitation of the facts of this case can be found in this court's opinion issued on September 12, 201. See Huongsten Production Import & Export Co. Ltd. v. Sanco Metals LLC, 810 F.Supp.2d 418 (D.P.R. 2011). Here, the Court recounts only those facts necessary to set the stage for the analysis. The uncontested, material facts thus follow.

Plaintiffs are a limited liability company organized under the laws of the Socialist Republic of Vietnam, and two of its representatives. Counterclaimant Nguyen, a resident of Oregon before moving to Puerto Rico, was a broker in the Puerto Rico scrap metal business at all times relevant to this case. Docket # 117–1, Exh 1 ¶¶ 2-4. Plaintiffs, at some point in time, decided to acquire the steel and scrap metal located at the Mill. For his part, Nguyen actively participated in "brokering" the sale of the Mill's metal, and, to that effect, contacted SANCO. Huongsten Production Import & Export Co. Ltd., 810 F.Supp.2d at 429 (citing Docket # 117–1, Exh. 1 ¶¶ 4–11). As a result of Nguyen's endeavors, SANCO and Plaintiffs signed the SANCO-Plaintiffs contract (the "Contract") for the sale of the Mill's steel and scrap metal. Even though Nguyen was not a party to that business transaction (SUF, ¶ 4), he prepared the inspection report Plaintiffs had required as a condition precedent to the signing of the Contract. Docket # 117–1, Exh 1 ¶ 13.

As a consequence of their transaction with SANCO, and seeking to have the metal shipped back to Vietnam, Plaintiffs signed two service agreement with defaulted co-defendants PRSD and Zen America to remove, process, transport, and load onto a vessel all of the metal. According to Nguyen's counterclaim, Zen America also contracted him on a "commission basis to show them the ropes" of the scrap metal business in Puerto Rico. Docket # 172, ¶ 44. But things went awry: PRSD and Zen America neither performed nor obtained a series of permits, and, although Plaintiffs disbursed over two millions dollars, they never received any metal.

**CIVIL NO. 10-1610 (SEC)**                                                                 Page 3

Huongsten Production Import & Export Co. Ltd., 810 F.Supp.2d at 426. Plaintiffs ultimately filed suit, alleging to have suffered losses totaling $2,960,000. Docket # 1.

After answering the complaint, Nguyen and the SANCO defendants counterclaimed under one sole cause of action: "Negligence in the Execution of [Plaintiffs'] contractual obligations." Docket # 172, p. 34.[2] Specifically, Nguyen argued that Plaintiffs negligently hired PRSD "with the knowledge that it lacked the proper permits." Id., ¶ 68. He also averred that the "true cause" why Plaintiffs never received anything was not SANCO and Nguyen's negligence but Plaintiff's own failure to properly extract the metal. Id., ¶ 70. Further, Nguyen assailed Plaintiffs for failing to secure the Mill. Such a lack of security, he alleged, culminated in the looting of the Mill's premises. Without any elaboration, Nguyen contended that Plaintiffs' actions have caused "economic harm, harm to his business and personal reputation, and emotional distress." Id., ¶ 172.

On September 12, 2011, this court granted partial summary judgment for Plaintiffs and against SANCO. And, after finding that Plaintiffs' consent was vitiated with substantial *dolo*, annulled the Contract. Huongsten Production Import & Export Co. Ltd., 810 F.Supp.2d at 434 (citing P.R. Laws Ann. tit. 31, § 3511-3512). SANCO's "deceitful concealment" of the inspection report's misrepresentations, this court reasoned, misled Plaintiffs into disbursing millions of dollars. Id. at 430. The Court considered, among other factors, that SANCO had remained silent that it had been Nguyen—not a professional as Nguyen and SANCO had made

---

[2] As previously indicated, the SANCO defendants and Nguyen were in cahoots: besides their protagonist role in the "business" with Plaintiffs, they shared the same counsel, as well as identical defenses. Huongsten Production Import & Export Co. Ltd., 810 F.Supp.2d at 429. Their counterclaim, which unfortunately provides no factual differentiation between the SANCO defendants and Nguyen, is identical.

**CIVIL NO. 10-1610 (SEC)**                                                                                      Page 4

Plaintiffs believe—who had masterminded the inspection report. Id. In a nutshell, it held that Nguyen had a significant involvement in the hoax perpetuated by SANCO against Plaintiffs. The SANCO defendants then filed for bankruptcy in late 2011, and an automatic stay was put in effect shortly thereafter. Docket # 258. The case, however, has continued as to Nguyen.

As the case proceeded, Plaintiffs filed the instant motion for summary judgment, seeking dismissal of Nguyen's counterclaim. They argue that Nguyen's counterclaim (1) does not allude to a "contractual obligation for obtaining permits or actually maintaining security at the Mill"; (2) fails to satisfy a contractual negligence cause of action; (3) fails to properly allege causation; and (4) "harm does not relate to their allegations regarding duty, breach, and causation." Docket # 277, p. 2.

Nguyen, who now appears pro se, timely opposed. Docket # 287.[3] Unfortunately, his opposition is devoid of a developed, coherent legal discussion and supporting authorities, in clear violation of Fed. R. Civ. P. 56, D.P.R. Civ. R. 7(a), and the so-called anti-ferret rule.[4]

---

[3] Because of irreconcilable differences between them, apparently related to fee payment, the Court authorized Nguyen and SANCO's former counsel to withdraw. Dockets # 235 & 257.

[4] Plaintiffs complied with Rule 56 and submitted a statement of uncontested facts ("SUF"), numbered, and supported by record citations. Docket # 278. In contrast, Nguyen neither submitted an opposing statement of facts nor filed a statement of additional facts; rather, he included his scumbled, factual contentions in his opposition memoranda, which are bereft of any legal discussion or citations. The Court thus disregards Nguyen's confusing averments. By like token, and because of lack of relevancy, the court ignores the affidavit (Docket # 287-2) included as part of Nguyen's defective opposition; Nguyen's pro se status does not insulate him from complying with Rule 56. See, e.g., Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997) ("Pro se status does not insulate a party from complying with procedural and substantive law."). To make matters worse, Plaintiffs' SUF, although fully compliant with Rule 56, is neither developed nor organized. The Court, in an attempt to offer a coherent narrative, has therefore been forced to allude to the factual determinations reached in the previous opinion. The factual conclusions contained therein, after all, are final, unappealable, and fully supported by the record.

Nguyen nonetheless reiterates that Plaintiffs should respond for the "damages" they allegedly caused to him as a result of negligently hiring PRSD and failing to provide security at the Mill.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court construes the record in the "light most flattering" to the nonmovant, resolving all reasonable inferences in that party's favor. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make a choice between the parties' differing versions of the truth at trial." DePoutot v. Raffaelly, 424 F.3d 112, 116 (1st Cir.2005) (quoting Garside, 895 F.2d at 48 (1st Cir.1990)); SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008). A fact is material, meanwhile, if it "[a]ffect[s] the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. Hadfield v. McDonough, 407

F.3d 11, 15 (1st Cir.2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbott Labs., Inc., 424 F.3d 35, 37 (1st Cir.2005) (citations and internal quotation marks omitted).

The foregoing means that the non-movant must "[p]roduce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 223 (1st Cir. 1996) (citations and internal quotation marks omitted); see also, e.g., Kelly v. United States, 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence").

Further, when filing for summary judgment, both parties must comply with the requirements of Local Rule 56 and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. D.P.R. Civ. R. 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation . . . .

CIVIL NO. 10-1610 (SEC) Page 7

D.P.R. Civ. R. 56(c) (emphasis added). The local rules further provide that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." D.P.R. Civ. R. 56(e). And that a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Id. When "a party opposing summary judgment fails to act in accordance with the rigors that such a rule imposes, a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Caban Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (citing Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004)). These rules, furthermore, "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Id. at 8. The First Circuit has repeatedly held that when the parties ignore the so-called anti-ferret rule, they do so at their own peril. E.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

**Applicable Law and Analysis**

As stated previously, Nguyen's cause of action faults Plaintiffs for their "negligence in the execution of their contractual obligations." Docket # 172, p. 34. Favoring substance over form, the Court views Nguyen's confusing and undeveloped cause of action not as a contractual claim (as Plaintiffs purportedly do) but as a general tort claim.[5] A close examination shows that Nguyen's cause of action is twofold. First, he complains that Plaintiffs, a principal, hired an independent contractor, PRSD, "with the knowledge that it lacked the proper permits." Id., ¶ 68. Nguyen thus maintains that, because they knew of PRSD's noncompliance, Plaintiffs should

---

[5] As said, there is no contractual relationship between Nguyen and Plaintiffs. And a principal's source of liability for the negligent acts of its contractors stems from Article 1802, P.R. Laws Ann. tit 31, § 5141. See Lopez v. Cruz Ruiz, 1992 P.R.-Eng. 755, 510, 131 P.R. Dec. 694, 706 (1992).

respond for the negligence of their contractor. Second, Nguyen contends that Plaintiffs "[f]ailed to maintain any security at the Mill, causing the extraction of metal from looters at the area." Id., ¶ 69. None of these contentions has merit.

At the outset, the Court reiterates that counterclaimant Nguyen's opposition memoranda fails to adequately address the issues raised—albeit defectively— in his counterclaim. Nguyen, therefore, has failed his duty of "[a]nalyzing relevant statutes and presenting applicable legal authority." CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1525-26 (1st Cir.1996). "Passing reference to legal phrases and case citation without developed argument is not sufficient to defeat waiver." Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003). Pursuant to this circuit's well-established "'raise-or-waive' rule," which "[a]pplies with equal force to situations where a [counterclaimant] . . . raises an issue in his [counterclaim], but then fails to adequately address it as part of his summary judgment argument[,]" id. (citation omitted), Nguyen's failure to proffer a developed argument to Plaintiffs' contentions is tantamount to waiver. Although Nguyen's counterclaim can be decided on the above-discussed "raise-or-waive" rule, the court briefly dispatches it on the merits.

It should go without saying that, in diversity cases such as this one, state law governs the substantive outcome. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). This action arises in the "field of torts," which in turn is controlled—"[b]oth in form and in content—by the civil law system." Valle v. American International Insurance Co., 8 P.R. Offic. Trans. 735, 736, 108 P.R. Dec. 692, 695 (1979) (Trias, C.J.). In turn, Article 1802 establishes that a "person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. A claimant seeking relief under this article

**CIVIL NO. 10-1610 (SEC)**                                                                 Page 9

must establish "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." Soc. Gananciales v. Padin Co., Inc., 17 P.R. Offic. Trans. 111, 117 P.R. Dec. 94 (1986). The scope of negligence under Article 1802 is broad—"as broad as the behavior of human beings... includ[ing] any fault that causes harm or injury." Bonilla v. Chardon, 18 P.R.Offic. Trans. 696, 709, 118 P.R.Dec. 599 (1987) (quoting Colon v. Romero-Barcelo, 112 P.R.Dec. 573, 579 (1982)). Nevertheless, the existence of an injury or damages alone is not grounds for liability under Article 1802. A defendant will be liable only for those reasonably foreseeable consequences associated with his acts or omissions. Wojciechowicz v. United States, 576 F. Supp. 2d 241, 270-72 (D.P.R. 2008) (citing De-Jesus-Adorno v. Browning Ferris Industries of Puerto Rico, Inc., 160 F.3d 839, 842 (1st Cir. 1998)), aff'd, 582 F.3d 57(1st Cir. 2009)

Regarding a defendant's omissions, those "that generate[] liability under Article 1802 happen[] when 'the law imposes a duty of care requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk.'" Zabala-Calderon v. U.S., 616 F. Supp. 2d 195, 199 (D.P.R. 2008). The duty of care may arise in one of three ways: "(1) by a statute, regulation, ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." De-Jesus-Adorno, 160 F.3d 842. Moreover, "the duty is defined by the general rule that one must act as would a prudent and reasonable person under similar circumstances." Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 49 (1st Cir, 2007) (citing Ortiz v. Levitt & Sons of P.R., Inc., 1 P.R. Offic Trans. 407, 101 P.R. Dec. 290 (1973)). Although the duty of care calls for the anticipation of reasonably probable injuries to probable victims, Marshall v. Perez Arzuaga, 828 F.2d 845, 847 (1st Cir. 1987), "the foreseeability required under [Article] 1802 does not extend to all

imaginable effects resulting from defendant's conduct. This would be tantamount to turning the defendant into an absolute insurer of its acts and omissions." <u>Wojciechowicz</u>, 576 F. Supp. 2d at 272. Therefore, a person breaches the duty of reasonable care only when his actions create reasonably foreseeable risks. <u>Vazquez-Filippetti</u>, 504 F.3d 43, 49.

Here, Nguyen's claim that Plaintiffs negligently hired PRSD "with the knowledge that it lacked the proper permits," borders on frivolous. As correctly pointed out by Plaintiffs, Nguyen was not a party to the contractual arrangements in this case. Above all, Nguyen's "damages"—damages to personal reputation, loss of commission, emotional distress and attorney's fees—bear no causal connection with Plaintiffs' alleged negligent acts. The damages for loss of commission have nothing to do with the permits' obtainment; rather, they relate to Plaintiffs' cancellation of their contract with Zen America.[6]

As to the remaining damages, suffice it to say that such "damages" were caused by Nguyen's own doing, that is, his fraudulent actions in engineering the inspection report that ultimately lured Plaintiffs into disbursing millions of dollars. Had Nguyen refrained from intentionally including fallible information in the inspection report, his reputation would have remained untarnished, and he would not have been sued. By like token, his alleged "emotional distress" was intentionally inflicted as a result of such fraudulent machinations. None of these alleged damages, then, relates to Plaintiffs' negligence in the obtainment of the permits. It thus flies in the face of reason that Nguyen has the audacity to allege such "damages." Because Nguyen has failed to rebut Plaintiffs' contentions that there is no causal connection between his

---

[6] The fact that Nguyen did not include damages for loss of commission in his counterclaim precludes him from doing so in his opposition for summary judgments. <u>See</u> <u>Marrero-Rodríguez</u> v. <u>Municipality of San Juan</u>, No. 11-1195, 2012 WL 1571234, at *3 (1st Cir. May 7, 2012).

**CIVIL NO. 10-1610 (SEC)**                                                                 Page 11

"damages" and the latter's alleged negligent acts, his claim on this front is way off the mark. See Sociedad de Gananciales v. Jeronimo Corp., 3 P.R. Offic. Trans. 179, 103 P.R. Dec. 133-34 (1974).

Equally flawed is Nguyen's one-sentence allegation that Plaintiffs' failure to secure the Mill caused him "damages." By failing to show how a "traditionally recognized duty of care," De Jesus, 160 F.3d 842, imposed upon Plaintiffs a duty to maintain security at the Mill, Nguyen falls short of rebutting Plaintiffs' contentions on this front. Assuming arguendo that Plaintiffs had such a duty, it cannot be said that Plaintiffs could have foreseen that failing to provide such security would have harmed Nguyen, a third-party to Plaintiffs' contractual arrangements, and a stranger with no proprietary interest over the Mill. While human experience dictates that leaving a place unsecured can result in its looting (as Nguyen alleges happened here), no reasonable, prudent person could have anticipated that failing to provide security at the Mill—and the alleged ensuing loss of metal—would have caused harm to Nguyen. Put differently, in the normal course of events, failing to maintain security at a Mill does not ordinarily produce the kind of harm Nguyen complains of. See Sepulveda de Arrieta v. Barreto, 1994 P.R.-Eng. 908,876, 137 P.R. Dec. 735, 759 (1994). The consequences of Plaintiffs' alleged wrongdoing, then, were "[r]emote and unlikely[,]" Rodriguez v. Señor Frog's De La Isla, Inc., 642 F.3d 28, 36 (1st Cir. 2011) (citations omitted), and, under these unforeseeable circumstances, fall outside of Article 1802's purview. It is thus unwarranted to impute responsibility to Plaintiffs.

Because Nguyen falls short of satisfying the requisites of Article 1802, his counterclaim fails as a matter of law. The evidence of record buttresses this conclusion. In sum, there is no

**CIVIL NO. 10-1610 (SEC)**                                                                                     Page 12

genuine issue of fact to submit to a jury, Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986), and, under Puerto Rico's tort law, Nguyen's counterclaim against Plaintiffs must be dismissed.

**Conclusion**

For the reasons stated, Plaintiffs' motion summary judgment is **GRANTED**. Nguyen's counterclaim against Plaintiffs is therefore **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of July, 2012.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge